### IN THE

## SUPREME COURT OF THE STATE OF GEORGIA,

### AT MACON,

## JANUARY TERM, 1859.

Present—JOSEPH H. LUMPKIN,
CHARLES. J. McDONALD, } Judges.
HENRY L. BENNING,

---

WILLIAM SLADE and JEREMIAH SLADE, plaintiffs in error, vs. JOHN J. STREET, administrator of ANN STREET, defendant in error.

If a Court of Equity has jurisdiction of any case of will probate, the case can be only one in which, the probate is, for some reason, not attainable in the Court of Ordinary.

In Equity, from Dooly Superior Court. Decision by Judge LAMAR, at October Term, 1858.

John J. Street, as administrator of Ann Street, filed this bill in the Superior Court of Dooly county, to October Term, 1853, against William Slade and Jeremiah Slade, alleging, that William Slade, in the year 1846, died in said county, leaving a last will and testament, that at the —— Term 18—— of the Inferior Court of said county, sitting for Ordinary purposes, said will was propounded for probate by Jeremiah Slade, one of the executors ; a *caveat* was filed to the probate on the ground, among others, that the will attempted to manumit slaves. The said Court of Ordinary sustained the *caveat* up-

on that ground alone, and granted letters of administration to William Slade, son of testator. The executor appealed to the Superior Court; that pending said appeal, the court-house of said county, together with all the papers in said cause, except perhaps the will, were burned up. That afterwards it was corruptly and fraudulently agreed by, and between the said William Slade, for himself and the other heirs and distributees of his father, and the said Jeremiah Slade, executor of said will, for a certain consideration, paid to said Jeremiah, that the judgment of the Court of Ordinary, should stand, and that said Jeremiah would desist from prosecuting his appeal; that no attempt was afterwards made to prove said will—that at that time, the said Ann Street was an infant *feme sole*; without a lawful guardian resident in the State of N. C., and had no knowledge that she was a devisee under said will, until a short time previous to her death, in 1852. That the facts were studiously concealed from plaintiff and his intestate; that neither of them ever received anything under said will, or any compensation, or consideration for her interest therein. That Ross and Hodges, two of the witnesses to said will, were not permitted to testify to its execution, but were informed that they would subject themselves to pains and penalties for attempting to aid in the emancipation of slaves, by proving said will; that testator gave to plaintiff's intestate, by said will, two lots of land, No. 25 and No. 40, in the 10th district of Dooly county. That defendants have, under color of the administration granted to William Slade, sold said lots at a greatly inadequate price, and converted the proceeds to their own use. That complainant has been informed and believes that defendants, or one of them, have in possession the original will, or a substantial or true copy thereof.

That complainant and his intestate have repeatedly demanded of the said Jeremiah, executor as aforesaid, if said papers were destroyed to establish the same, and prosecute said cause to final judgment, and also to produce said original will, or to furnish a copy thereof, and to yield up to him the

Slade & Slade vs. Street.

land aforesaid, or to pay over to him the full value thereof, but that defendants refuse so to do. The bill prays, that the defendants may be compelled to set forth a true copy of said will, and the proceedings touching the probate thereof; that the contract between said William and Jeremiah, should be set aside for fraud; that said copy should be established, and said cause proceed in said appeal, and said will be fully established; that the administration granted to William Slade be revoked, and that complainant should recover the devise to his intestate under said will, or in the event said land has passed into the hands of innocent purchasers, then, that defendants be compelled to account for the present value thereof, with rents, issues, and profits.

To this bill defendants demurred, on the ground, that a Court of Equity had no jurisdiction in and over the matters set up and alleged therein, but, that the same were alone cognizable in and by the Court of Ordinary.

After argument, the Court overruled the demurrer, and counsel for defendants excepted.

Dawson, represented by Stubbs & Hill; S. T. Bailey, for plaintiffs in error.

Hall; and Scarborough, *contra.*

*By the Court.*—Benning J. delivering the opinion.

Did a Court of Equity have jurisdiction of this suit?

The bill prayed, that a judgment of a Court of Ordinary, rejecting a paper propounded as a will, should be set aside; that this paper should be established, as a will, and the administration of it, as a will, superintended; and, that the letters of administration, in the way, should be revoked.

Certainly, the Court which has jurisdiction over common

cases of this sort, is a Court of Ordinary, and is not, a Court of Equity.

Perhaps it is true, (and I myself incline to think that it is true,) that the only Court which has jurisdiction over cases of this sort, whether they be common or uncommon cases, is the Court of Ordinary.  The Act of 1810, says, that the Court of Ordinary " shall have the original jurisdiction of all testate and intestates estates, appointing administrators and guardians, to qualify executors, administrators and guardians, and to bind out orphans, and all such other matters and things, as appertain, or relate, to estates of deceased persons, testate or intestate." *Pr. Dig.*, 239.

Another Act gives the Superior Courts an appellate jurisdiction, in all cases over which, the Courts of Ordinary have original jurisdiction.  *Id.* 237.

These Acts are but to carry out the words of the Constitution itself.  " The powers of a Court of Ordinary or Register of Probates, shall be vested in the Inferior Courts of each county, from whose decision, there may be an appeal to the Superior Court." *Id.* 910.

Is it not the conclusion to be drawn from this part of the Constitution, and from these Acts to carry out the part, that the Courts of Ordinary have *exclusive original* jurisdiction of all cases concerning probates and administrations—all, without a single exception—and that the only jurisdiction of such cases which, any other Court has, is an *appellate* jurisdiction.  I strongly incline to think so.  Perhaps, a Court of Equity may have the power to aid this jurisdiction of the Courts of Ordinary, by compelling discovery.  That is a question on which, I express no opinion.  See 21 *Ga.*, 14.

But, at least, this may be assumed as true; that to put a case like the present, within the jurisdiction of a Court of Equity, the case must be one entitled to a relief which, a Court of Ordinary cannot give, and which a Court of Equity can give.  This, the counsel for the defendant in error, admit.

The question then becomes this, is the present case enti-

tled to a relief which, a Court of Ordinary cannot give, and which a Court of Equity can give?

What is the relief to which, the case is entitled? The establishment of the paper as a will. That will comprehend all the relief prayed for. Is this a relief attainable, better in a Court of Equity, than in a Court of Ordinary? We do not see, that it is.

Grant that the paper to be propounded as a will has been burnt up, yet a Court of Ordinary can as well establish a lost or destroyed will, as can, a Court of Equity. Whatever evidence, in such a case, a Court of Equity can command a Court of Ordinary can equally command. Cases in plenty, of the establishment of lost wills by the Ecclesiastical Courts, are to be found.

Grant, also, that this paper was once presented to the Court of Ordinary, for probate, and was then adjudged to be not a will; and grant, that the reasons stated in the bill why that judgment should not bind Street, the defendant, are sufficient, yet those reasons will be as available in the Court of Ordinary, as they could be, in a Court of Equity. What are those reasons? They are; first, that the judgment was procured by a fraudulent agreement between the person named as executor in the paper, and the heirs of the author of the paper. Secondly, that one of the beneficiaries under the paper, at the time of the judgment, was a minor, was a resident of North Carolina, and was without notice of the suit. These reasons would be as available in the Court of Ordinary, as they could be in a Court of Equity. A Court of Ordinary can set aside any of its judgments procured by fraud; a Court of Equity could do no more. A Court of Ordinary would no more hold one of its judgments, to be binding on a person not of age, or not within the State, or not having notice of the suit in which, the judgment was rendered, than would a Court of Equity.

For aught that we can see, then, the relief to which, the complainant Street is entitled, is quite as attainable in a

Court of Ordinary, as it could be, in a Court of Equity. Consequently, we think, that a Court of Equity has no jurisdiction of this case. Therefore, we must hold, that the demurrer ought to have been sustained.

Judgment reversed.